**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
                                        )
INMODE LTD.,                            )
                                        )
                    Plaintiff,          )
                                        )         Civil Action
v.                                      )         No. 24-cv-12955-PBS
                                        )
BTL INDUSTRIES, INC. d/b/a BTL          )
AESTHETICS,                             )
                                        )
                    Defendant.          )
_____ )

**ORDER**

April 9, 2026

Saris, J.

In this patent infringement suit regarding U.S. Patent No. 8,961,511 ("the '511 patent"), Plaintiff InMode Ltd. ("InMode") moves to dismiss the third counterclaim and fifth affirmative defense raised by BTL Industries, Inc. ("BTL"), in which BTL raises the defense of inequitable conduct. After hearing, the Court **DENIES** InMode's motion to dismiss (Dkt. 174).

Contrary to InMode's arguments, BTL has pled with particularity "the specific who, what, when, where, and how of the . . . [alleged] omission committed before the" U.S. Patent and Trademark Office (the "PTO"). Exergen Corp. v. Wal-Mart Stores, Inc., 575 F.3d 1312, 1327 (Fed. Cir. 2009); see Fed. R. Civ. P. 9(b). As to the "who" and "when," BTL alleges that Dr. Richard Shoop, a prosecuting attorney for the '511 patent who concurrently

1

had power of attorney over U.S. Patent No. 6,463,331 ("the '331 patent"), withheld material information regarding the '331 patent from the PTO between June 9, 2014, and February 24, 2015. See Exergen, 575 F.3d at 1329 (holding that the pleader must "name the specific individual" who allegedly committed inequitable conduct). As to the "what" and "where," BTL cites specific information from the '331 patent that allegedly would have been material to the PTO in considering the '511 patent's independent claims directed to the treatment of female genital tissue. See id. (holding that the pleader must "identify which claims, and which limitations in those claims, the withheld references are relevant to, and where in those references the material information is found"); '511 patent at 15:48-52, 17:13-17 (limitations referring to "target tissue," whose definition includes reference to "female genital tissue"). And as to the "why" and "how," BTL alleges that the patent examiner believed that the record included no prior references directed to the treatment of female genital tissue and that the addition of the '331 patent therefore would have changed the outcome of the PTO's decision whether to issue the '511 patent. See Exergen, 575 F.3d at 1329-30 (requiring allegations of what limitations "are supposedly absent from the information of record" and how "an examiner would have used this information in assessing the patentability of the claims").

2

Further, BTL has adequately alleged "underlying facts from which [the] [C]ourt may reasonably infer that [Dr. Shoop] (1) knew of the withheld material information . . . , and (2) withheld . . . this information with a specific intent to deceive the PTO." Id. at 1328-29; see id. at 1328 ("'[K]nowledge' and 'intent' may be averred generally . . . ."). BTL alleges that Dr. Shoop simultaneously had power of attorney over the '331 patent and communicated with the PTO as a prosecuting attorney for the '511 patent. The Court thus may draw the reasonable inference that a "specific individual" -- Dr. Shoop -- knew of the "specific information" in the '331 patent regarding treatment of female genital tissue yet withheld that information from the PTO. Id. at 1330. And BTL alleges that these factual allegations and future evidence will collectively reflect that, as required under Federal Circuit precedent, "the single most reasonable inference able to be drawn" is that Dr. Shoop specifically intended to deceive the PTO. Therasense, Inc. v. Becton, Dickinson & Co., 649 F.3d 1276, 1290 (Fed. Cir. 2011) (en banc) (quoting Star Sci., Inc. v. R.J. Reynolds Tobacco Co., 537 F.3d 1357, 1366 (Fed. Cir. 2008)). Although BTL will be held to a higher standard in subsequent stages of the litigation, see, e.g., id. ("[A] district court may not infer intent solely from materiality."), its allegations are sufficient at the pleading stage, given that "a district court may infer intent from indirect and circumstantial evidence," id.; see

3

also <u>Exergen</u>, 575 F.3d at 1329 n.5 (discussing difference in inequitable conduct analysis between pleading stage and merits).

InMode points out that in a recent <u>inter partes</u> review ("IPR") decision by the Patent Trial and Appeal Board (the "PTAB"), the PTAB rejected BTL's contention that all claims of the '511 patent were obvious in light of the '331 patent and other prior art references. <u>See</u> Dkt. 152-1 at 23-35. But InMode does not press the issue of whether the IPR decision necessarily precludes this Court from finding a plausible allegation of inequitable conduct at the pleading stage, and at the hearing, InMode expressly disclaimed making such an argument. <u>See</u> <u>Chervon (HK) Ltd. v. One World Techs., Inc.</u>, No. 19-1293, 2025 WL 2630497, at *6-7 (D. Del. Jan. 13, 2025) (collecting cases with differing approaches to this issue). The Court will not wade into this undeveloped territory absent invitation or briefing, particularly given that the IPR decision is currently on appeal.

Accordingly, InMode's motion to dismiss (Dkt. 174) is **DENIED**.


SO ORDERED.

                          /s/ PATTI B. SARIS
                          Hon. Patti B. Saris
                          United States District Judge