**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| INMODE LTD., <br>          Plaintiff, <br><br>     v. <br><br> BTL INDUSTRIES, INC., <br><br>          Defendant. | **Case No: 1:24-cv-12955-PBS** <br><br><br> **JURY TRIAL DEMANDED** |
| IN RE SUBPOENA TO <br> DR. KATHERINE ATKINSON | |

**PLAINTIFF INMODE LTD.'S OPPOSITION TO**
**<u>DR. KATHERINE ATKINSON'S MOTION TO QUASH</u>**

**TABLE OF CONTENTS**

**Page(s)**

I.    INTRODUCTION ................................................................................................................. 1

II.    STATEMENT OF FACTS ................................................................................................... 1

III.    LEGAL STANDARD ......................................................................................................... 3

IV.    ARGUMENT ...................................................................................................................... 3

        A.    The Subpoena Goes to the Heart of InMode's Indirect Infringement Allegations ...... 3
        B.    Dr. Atkinson's Challenges to the Subpoena Fail to Establish Impropriety ................. 4

                1.    Dr. Atkinson Fails to Put Forth the Required Showing to Support a Motion to Quash ................................................................................................................ 4
                2.    The Subpoena Seeks Distinct, Non-Duplicative Information from a Custodian with Unique Percipient Knowledge ................................................................. 5
                3.    Dr. Atkinson's Cumulativeness and Failure-to-Exhaust Arguments Are Undermined by BTL's Lack of Engagement in Discovery .............................. 9

        C.    Dr. Atkinson Fails to Show the Subpoena is Overbroad, Disproportionate, and Not Sufficiently Tailored. ........................................................................................... 10
        D.    Dr. Atkinson's Patient-Privacy Arguments Provide No Basis to Quash ................... 11
        E.    InMode's Subpoena Seeks Percipient Fact Discovery, Not Unretained Expert Opinion Testimony .................................................................................................... 13
        F.    Dr. Atkinson's Request for a Stay and Alternative Relief Should Be Denied ........... 15

V.    CONCLUSION ................................................................................................................ 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adesanya v. Novartis Pharm. Corp.*, No. 13-cv-5564,
  2015 U.S. Dist. LEXIS 159712 (D.N.J. Nov. 24, 2015)......................................................3, 4

*Cates v. Zeltiq Aesthetics, Inc.*, No. 20-mc-91234-NMG,
  2020 U.S. Dist. LEXIS 167158 (D. Mass. Sep. 14, 2020).......................................................14

*Dale Evans Parkway 2012 v. Nat'l Fire & Marine Ins. Co.*, No. ED CV 15-979-JGB,
  2016 U.S. Dist. LEXIS 187094 (C.D. Cal. Oct. 27, 2016) ...................................................... 3

*Downey v. Bob's Disc. Furn. Holdings, Inc.*,
  633 F.3d 1 (1st Cir. 2011) ......................................................................................................13

*DR Sys., Inc. v. Eastman Kodak Co.*, No. 09cv1625-H (BLM),
  2009 U.S. Dist. LEXIS 84575 (S.D. Cal. Sept. 14, 2009) ......................................................13

*DSU Med. Corp. v. JMS Co.*,
  471 F.3d 1293 (Fed. Cir. 2006)................................................................................................ 4

*Global-Tech Appliances, Inc. v. SEB S.A.*,
  563 U.S. 755 (2011) ................................................................................................................ 4

*Green v. Cosby*,
   152 F. Supp. 3d 31 (D. Mass. 2015) ........................................................................... 4-6, 9, 14

*Kirschner v. Klemons*, No. 99 Civ. 4828 (RCC),
  2005 U.S. Dist. LEXIS 9803, at *5 (S.D.N.Y. May 18, 2005)................................................ 3

*LSI Corp. v. Vizio, Inc.*, No. 12-mc-91068-DJC
  2012 U.S. Dist. LEXIS 83657 (D. Mass. May 24, 2012) .......................................................16

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
  572 U.S. 915 (2014) ................................................................................................................ 4

*In re New England Compounding Pharmacy, Inc.*, No. 13-2419-FDS,
  2013 U.S. Dist. LEXIS 161652 (D. Mass. Nov. 13, 2013).................................................3, 10

*In re Uber Techs., Inc.*, No. 23-md-03084-CRB (LJC),
  2024 U.S. Dist. LEXIS 123530 (N.D. Cal. July 14, 2024).................................................9, 15

*Viacom Int'l, Inc. v. YouTube, Inc.*, No. C 08-80129 SI,
  2008 U.S. Dist. LEXIS 79777 (N.D. Cal. Aug. 18, 2008).................................................. 9-10

*Winthrop v. Omni Hotels Mgmt. Corp.*, No. 19-cv-979-AJ,
  2021 U.S. Dist. LEXIS 57086 (D.N.H. Feb. 11, 2021) ..........................................................13

**Statutes**

35 U.S.C. §§ 271(b) and (c) ................................................................................................ 3-4

**Other Authorities**

45 C.F.R. § 164.512(e) ..................................................................................................... 12-13

Fed. R. Civ. P. 26 ................................................................................................................ 10

Fed. R. Civ. P. 30(a)(1) ......................................................................................................... 3

Fed. R. Civ. P. 45 ............................................................................................... 3, 13-14, 16

## I.    INTRODUCTION

Dr. Katherine Atkinson's Motion to Quash (Dkt. No. 219; "MTQ") is part of a coordinated campaign—orchestrated through the same counsel that represents BTL—to obstruct document production and block deposition testimony from the physicians who actually perform the accused treatments covered by the asserted method claims. This is discovery BTL itself will not or cannot provide. Because InMode alleges that BTL indirectly infringes method claims of U.S. Patent No. 8,961,511 (the "'511 Patent"), testimony from the physicians who directly infringe those claims is essential to InMode's case. Dr. Atkinson contends that the subpoena is "cumulative" of party discovery, "facially overbroad and disproportionate," seeks "unretained expert" testimony, and intrudes on "patient" privacy (MTQ at 1–2), but fundamentally ignores an unavoidable reality: Dr. Atkinson *is the direct infringer* of InMode's '511 Patent. As the direct infringer, she possesses highly-relevant percipient documents and testimony that are not merely helpful, but critical to InMode's case.

With fact discovery closing in just over a month and BTL having produced little more than irrelevant marketing materials during six months of delay, neither Dr. Atkinson nor BTL can credibly argue that this discovery is available from BTL through "a more convenient, less burdensome, or less expensive source." MTQ at 1. InMode has narrowly tailored its subpoena to seek percipient fact discovery from a physician who performs the accused treatments, ensured HIPAA-compliant handling of any patient information, and minimized the burden on Dr. Atkinson. The real objection is not burden—it is that Dr. Atkinson possess the direct-infringement evidence BTL has withheld, and that InMode will use at trial to establish that BTL is an indirect infringer.

The Court should deny Dr. Atkinson's Motion and decline to quash the subpoena.

## II.    STATEMENT OF FACTS

For eighteen months, BTL has obstructed discovery. InMode served its First Set of Requests for Production (Nos. 1–45) and First Set of Interrogatories (Nos. 1–15) on January 8, 2025. Dkt. No. 216-5 at 1; Dkt. No. 216-6 at 1. BTL's initial objections and responses were untimely, evasive, and

1

did little more than punt until after the Court ruled on BTL's motion to stay. Ex. A at 1. After the Court lifted the stay on October 30, 2025, InMode spent months pressing BTL to substantively respond—to no avail. *Id.* When BTL finally supplemented its responses, it raised new objections and largely refused to produce documents or answer interrogatories—on grounds not properly preserved in its initial responses. *Id.* at 1–2.

Since January 2026, InMode has pressed relentlessly for complete responses. On January 2, InMode sent BTL a detailed deficiency letter identifying each incomplete response and demanding corrections by January 16. *Id.* at 1. BTL responded on January 13—largely refusing to engage with InMode's specific requests. Ex. B. The parties have since exchanged extensive correspondence and repeatedly met and conferred. At each turn, BTL has agreed to provide—or "consider providing"—additional documents, yet meaningful production has not materialized.

After six months of back-and-forth, BTL's production remains grossly incomplete. Over a month ago, BTL stated it would "continue to supplement as document review is completed." Ex. C at 4. Yet, in the last six months, BTL has produced only two batches totaling fewer than 300 documents—consisting largely of irrelevant marketing materials for treatments InMode does not even accuse.[1] Faced with BTL's continued refusal to produce meaningful discovery and with the close of fact discovery rapidly approaching, InMode had no choice but to serve subpoenas on Drs. Lacombe, Atkinson, Evans, and Berenholz—physicians who actually perform the accused procedures using BTL's products—on May 21, 2026. Dkt. No. 219-1 at 1. The subpoenas are focused on the heart of InMode's case—BTL's acts to induce its physician customers' infringement and the physicians' direct infringement—by way of the following categories of evidence: BTL's instructions to its physician customers, the physicians' awareness of, purchase of, training on, and actual use of the

---

[1] This is despite BTL's objections to producing documents related to non-accused treatments and InMode's repeated confirmations that it is not seeking marketing materials related to non-accused treatments. *See*, e.g., Ex. D at 11.

accused devices and procedures. Dkt. No. 219-1 at 11–15. Dr. Atkinson—a family-medicine physician in Amherst, Massachusetts who purchased and uses BTL's accused devices—now moves to quash her subpoena, advancing nearly identical objections to those BTL pressed in its motion for a protective order. *Compare* MTQ *with* Dkt. No. 216.

### III.    LEGAL STANDARD

Federal Rule of Civil Procedure 30(a)(1) states that "a party may, by oral questions, depose any person . . . ." Federal Rule of Civil Procedure 45(d)(3)(A)(iii) requires a court to quash or modify a subpoena that "requires disclosure of privileged or other protected matter." The party moving to quash a subpoena bears the "heavy burden" of persuasion under Rule 45. *Kirschner v. Klemons*, No. 99 Civ. 4828 (RCC), 2005 U.S. Dist. LEXIS 9803, at *5 (S.D.N.Y. May 18, 2005); *Dale Evans Parkway 2012 v. Nat'l Fire & Marine Ins. Co.*, No. ED CV 15-979-JGB (SPx), 2016 U.S. Dist. LEXIS 187094, at *10 (C.D. Cal. Oct. 27, 2016) ("On a motion to quash a subpoena, the moving party has the burden of persuasion under Rule 45(c)(3)."). General assertions about the impropriety of a subpoena are insufficient. *Adesanya v. Novartis Pharm. Corp.,* No. 13-cv-5564, 2015 U.S. Dist. LEXIS 159712, at *4 (D.N.J. Nov. 24, 2015).

A party moving to quash bears the burden of demonstrating that compliance would impose an undue burden, and "cannot rely on a mere assertion that compliance would be burdensome and onerous without showing the manner and extent of the burden and the injurious consequences of insisting upon compliance." *In re New Eng. Compounding Pharm., Inc.*, No. 13-2419-FDS, 2013 U.S. Dist. LEXIS 161652, at *32 (D. Mass. Nov. 13, 2013) (internal quotations omitted).

### IV.    ARGUMENT

####   A.    The Subpoena Goes to the Heart of InMode's Indirect Infringement Allegations

InMode's case turns on indirect infringement—specifically, that BTL actively and knowingly encourages the physicians who purchase its equipment to use it in a manner that infringes InMode's patent. InMode alleges that BTL indirectly infringes the '511 patent under 35 U.S.C. §§ 271(b) and

(c). Inducement under § 271(b) requires proof that the accused infringer "knowingly induced infringement and possessed specific intent to encourage another's infringement." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (internal citations omitted); *see also Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 760 (2011). Critically, proving inducement requires proof that a third party directly infringed the asserted claims. *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 921 (2014) ("[L]iability for inducement must be predicated on direct infringement."). This is not merely a procedural technicality—it is a substantive element that InMode must prove at trial. Here, the asserted claims are method claims, which are directly infringed by performing the claimed method steps. To prove inducement, InMode must therefore show that physicians actually perform the claimed methods—and that BTL induced them to do so. Dr. Atkinson is one of those direct infringers. The discovery sought from Dr. Atkinson is not ancillary or peripheral; it goes to the  foundation of InMode's case. The subpoena seeks precisely this essential information: how BTL instructs physicians to perform the accused treatments and how Dr. Atkinson actually performs those methods in her practice. *See, e.g.*, Dkt. No. 219-1 at 7–8, 12–14. Blocking this discovery would effectively immunize BTL from InMode's indirect infringement claims by depriving InMode of evidence to prove direct infringement by the physicians BTL induced.

> **B.      Dr. Atkinson's Challenges to the Subpoena Fail to Establish Impropriety**

> **1.      Dr. Atkinson Fails to Put Forth the Required Showing to Support a Motion to Quash**

Simply put, Dr. Atkinson's complaints of undue burden (i.e., cumulativeness, overbreadth, and disproportionality) are nothing more than improper, generalized assertions that cannot support a motion to quash. *Adesanya*, 2015 U.S. Dist. LEXIS 159712 at *4. As courts in this District have repeatedly explained, the party resisting discovery "cannot rely on a mere assertion that compliance would be burdensome and onerous without showing the manner and extent of the burden and the injurious consequences of insisting upon compliance." *Green v. Cosby*, 152 F. Supp. 3d 31, 36-37 (D.

Mass. 2015) (collecting cases). Rather, "the party who alleges [undue] burden [must] establish the burden with specificity." *Id.* at 37 (citation omitted). Dr. Atkinson has failed to do so here. To carry her burden, Dr. Atkinson was required to submit "an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request." *Id.* (citation omitted). She submitted nothing of the sort. Dr. Atkinson's failure to provide any such affidavit or evidentiary proof alone "may suffice to deny [her] 'undue burden' argument." *Id.* Instead of concrete evidence, Dr. Atkinson offers only conclusory objections that fail to show undue burden. That is insufficient as a matter of law.

> **2.    The Subpoena Seeks Distinct, Non-Duplicative Information from a Custodian with Unique Percipient Knowledge**

Dr. Atkinson contends that the subpoena should be quashed because the discovery it seeks is "cumulative" of party discovery and "available from BTL." MTQ at 7–8. This argument collapses under scrutiny. The subpoena seeks documents and testimony related to (1) instructions Dr. Atkinson received from BTL regarding the accused treatments, and (2) her actual performance of those treatments. Neither category is in BTL's possession. The first reflects what the physician understood and retained; the second reflects what she actually does in performing the accused treatments. Both are uniquely within the physician's knowledge—not BTL's. The discovery is therefore not cumulative.

Dr. Atkinson never identifies which specific requests or topics she believes are cumulative. Instead, the motion vaguely references general categories of BTL's instructions, manuals, training materials, demonstrations, sales and customer information, purchase documents, customer feedback, and financial data. But these categories miss the point. The subpoena does not seek BTL's own records—it seeks first-hand, percipient knowledge of a representative BTL customer-physician[2]

---

[2] In addition to Dr. Atkinson, a family medicine physician, InMode subpoenaed two OB/GYNs who

regarding how she uses the accused BTL products to perform the accused treatments. That information exists only in the physician's possession. Additionally, while Dr. Atkinson complains that the subpoena uses a Rule 30(b)(6) format and improperly defines "You" and "Your" to include "all Persons having any involvement in your medical practice" (MTQ at 1–2, 9), this does not render the subpoena improper. And despite this complaint, Dr. Atkinson does not appear to argue that this is a basis for quashal. *See id.* at 9. InMode confirms that it seeks documents and testimony only from Dr. Atkinson based on her personal knowledge—InMode does not intend for her to investigate or testify on behalf of her practice. Further, while the subpoenas include lists of topics for the deposition, InMode did not include these intending Dr. Atkinson to prepare as if they were a designee. InMode simply intended to inform Dr. Atkinson of the topics they intended to question her on, minimizing the burden of preparing for the depositions.

Even if Dr. Atkinson had identified specific requests she believes are cumulative, the mere fact that there may be some overlap between the discovery available from her and discovery available from BTL is insufficient to show that the subpoena is ***unreasonably*** cumulative of party discovery. Courts in this District have squarely rejected similar unsupported arguments that a party "***can***" provide the same discovery as a third party. For example, in *Green v. Cosby*, the court explained that third-party discovery is not improperly cumulative where "there is simply no way (outside of counsel's unsworn and unsupported assertions) to conclude . . . that the information elicited from [the third party] will, ***in all respects***, mirror that provided by the defendant." *Green*, 152 F. Supp. 3d at 38 (emphasis added). The same is true here. Other than counsel's unsworn and unsupported assertions— which are entitled to no weight—Dr. Atkinson has provided no basis whatsoever to conclude that the

---

serve as key opinion leaders for BTL (Dr. Evans and Dr. Berenholz), and a plastic surgeon (Dr. Lacombe). These four customer physicians cover not only different specialties, but also different customer roles and different sources of inducement and direct-infringement evidence. BTL's refusal to identify its customers limited InMode's ability to select a broader or less burdensome sample of representative customer physicians.

discovery obtained from her will be identical to that obtained from BTL "in all respects." To the contrary, as detailed below, InMode seeks significant categories of information that BTL cannot provide:

Topics and requests, topics 6, 7, and 11 and requests 6, 7, and 14 go to the heart of InMode's case: how the accused procedures are *actually performed* by Dr. Atkinson. Her first-hand experience using the accused devices—the specific steps she performs during each treatment—is direct-infringement evidence. BTL cannot supply this evidence because BTL does not perform the procedures. Only physicians can testify as to what they actually do with BTL's equipment.

Topics 15, 17, and 19 and requests 15, 17, and 19 seek Dr. Atkinson's own communications and documents. While InMode's request 15 and topic 15 cover documents and communications that BTL could ostensibly provide, Dr. Atkinson is the most expeditious and complete source for this information. Indeed, BTL has previously stated that it "does not maintain a central repository for customer communications." Ex. E at 2. As such, it is unlikely that any search by BTL would identify the documents and things BTL provided to Dr. Atkinson and the communications between Dr. Atkinson and BTL. Further topics 17 and 19 and requests 17 and 19 seek documents and things provided to other third parties. As such, it is unlikely that BTL possesses any of these documents and things that are uniquely within Dr. Atkinson's possession.

Topics 1–4, 9, 10, and 18 and requests 1–4, 5, 9, 10, and 18 seek Dr. Atkinson's knowledge, purchase, contract, and training records. Again, because BTL "does not maintain a central repository for customer communications," Ex. E at 2, it does not appear that any search performed by BTL would be as complete as a search performed by Dr. Atkinson. Further, request 1 and topic 1 seek information related to her own awareness of BTL; unless Dr. Atkinson only heard about BTL from an employee of BTL, BTL would not have this information. Request 2 and topic 2 seek information related to materials viewed by Dr. Atkinson about the accused devices; this clearly encompasses

documents that were not provided by and may not be in the possession of BTL. Request 4 and topic 4 seek all steps taken to purchase the accused devices; this covers how Dr. Atkinson became aware of BTL (e.g., through advertising materials and other documents inducing infringement), and thus steps taken outside the knowledge of BTL. Further, while requests 9 and 10 and topics 9 and 10 seek documents and things such as contracts that BTL may be able to provide, BTL has refused to produce them to date, and the requests and topics specifically seek information "relating to" those categories of documents and things and thus would include information not necessarily in BTL's possession. Finally, it is unlikely that BTL would have information relevant to Dr. Atkinson's first awareness of InMode as requested by request 18 and topic 18.

Topic 12 and request 11 seek the results of the accused procedures, including the physical changes to a patient's anatomy and the patient's experience in undergoing the procedure. While BTL may have in its possession some facts and observations related to the physiological changes, this is information that is generally uniquely within the possession of physicians who perform the accused treatments, like Dr. Atkinson.

Topic 20 and request 20 seek documents related to ways in which BTL may compensate Dr. Atkinson. Again, this information could ostensibly come from BTL, but BTL avers that it "does not maintain a central repository for customer communications," and BTL has declined to produce documents responsive to related requests on that basis. Ex. E at 2

Topics 13 and 14 and requests 12 and 13 seek customer and patient feedback regarding the accused devices and accused procedures, including positive, negative, and neutral impressions from patients and other medical professionals. Again, BTL has refused to produce similar documents on the basis that it "does not maintain a central repository for customer communications" and that "feedback from customers" is irrelevant. Ex. E at 2. Further, it is unlikely that all feedback is transmitted to BTL. Dr. Atkinson would thus have information responsive to these requests and topics

that are uniquely within her own possession.

Topic 18 and request 18 seek information regarding the first time Dr. Atkinson became aware of InMode and its radiant-energy devices for vaginal tissue. This is, by definition, information about her own knowledge, and it is not within BTL's possession unless Dr. Atkinson happened to learn of InMode from BTL itself. Her awareness of InMode's competing technology is relevant to inducement, demand, the existence of acceptable non-infringing alternatives, and copying. Dr. Atkinson is the only source able to testify to when and how that awareness arose.

### 3.    Dr. Atkinson's Cumulativeness and Failure-to-Exhaust Arguments Are Undermined by BTL's Lack of Engagement in Discovery

While Dr. Atkinson suggests that the proper course would be for InMode to continue pursuing the allegedly cumulative information from BTL, BTL's own failures to produce that information undermine the argument. Courts in this District have emphasized that when the "defendant [it]self is yet to" provide the allegedly cumulative discovery, a cumulativeness argument improperly "presupposes not only defendant's own [discovery responses] as well as that of [the third party], but that the two will be entirely consistent." *Green*, 152 F. Supp. 3d at 38. That is precisely the situation here. BTL's persistent refusal to meaningfully engage in discovery is the very reason this subpoena is necessary—and Dr. Atkinson cannot now use BTL's obstruction as a shield against legitimate third-party discovery.

Dr. Atkinson argues that InMode must "first exhaust" less burdensome party discovery from BTL before subpoenaing her. MTQ at 12. That is not the law, and the argument is in any event undermined by BTL's own conduct. "Rule 45 does not require that a requesting party exhaust party discovery before seeking discovery from a nonparty." *In re Uber Techs., Inc.*, No. 23-md-03084-CRB (LJC), 2024 U.S. Dist. LEXIS 123530, at *19–20 (N.D. Cal. July 14, 2024). And there is "no general rule that plaintiffs cannot seek nonparty discovery of documents likely to be in defendants' possession." *Id.* (quoting *Viacom Int'l, Inc. v. YouTube, Inc.*, No. C 08-80129 SI, 2008 U.S. Dist.

9

LEXIS 79777, at *10 (N.D. Cal. Aug. 18, 2008)). This principle applies here, where BTL has stonewalled InMode's discovery for eighteen months. The "less burdensome source" argument assumes that party discovery from BTL is an available alternative. It is not. Rule 26(b)(2)(C)(i) permits courts to redirect discovery where the information "can be obtained" from a more convenient source—but that inquiry turns on *actual*, not theoretical, availability. Where the responding party has refused to produce information despite months of opportunity and a fast-approaching discovery deadline, the supposed alternative is illusory. Courts in this District recognize as much: cumulative discovery from nonparties is permissible where the requesting party "can show that it is more expeditious to obtain the documents from" the nonparty. *In re New Eng. Compounding Pharm., Inc.*, No. 13-2419-FDS, 2013 U.S. Dist. LEXIS 161652, at *35 (D. Mass. Nov. 13, 2013).

In any event, Dr. Atkinson has not—and cannot—show undue burden. The party moving to quash "bears the burden of showing that the subpoena imposes an undue burden" and "cannot rely on a mere assertion that compliance would be burdensome and onerous without showing the manner and extent of the burden and the injurious consequences of insisting upon compliance." *Id.* at *32 (internal quotations omitted). Dr. Atkinson's generalized assertions of lost practice revenue, the cost of retaining counsel, and the burden of a patient-privacy review (MTQ at 2, 5, 8–10, 12) are conclusory and, in any event, largely the product of BTL's own refusal to identify its customers or produce the underlying materials. They do not satisfy her burden.

### C.    Dr. Atkinson Fails to Show the Subpoena is Overbroad, Disproportionate, and Not Sufficiently Tailored.

Beyond generalized assertions, Dr. Atkinson fails to articulate how the requests and topics are "broad [and] unbounded." Dr. Atkinson complains that "the subpoena requires Dr. Atkinson and counsel to determine what devices and procedures fall within InMode's expansive definitions." MTQ at 8. But InMode's subpoena specifically defines the accused devices to include "BTL's vaginal rejuvenation treatments . . . including . . . BTL's UltraFemme 360 products . . . and BTL's EmFemme

360 products . . . and any related accessories, components, or systems used . . . in connection with such products." Dkt. No. 219-1 at 2. This is a closed universe of products, and according to Dr. Atkinson's website, the EmFemme 360 product is the only "vaginal rejuvenation" treatment that Dr. Atkinson offers. Dr. Atkinson next argues that she needs to "search years of records and ESI," (MTQ at 8), but Dr. Atkinson allegedly first offered the EmFemme 360 in 2022, meaning she would likely only have to search a roughly four-year period. Ex. F. Finally, Dr. Atkinson complains that she would have to engage in routine discovery procedures including reviewing documents, "prepar[ing] objections and privilege/privacy logs,"[3] and preparing for a deposition. MTQ at 8. But these routine aspects of discovery alone cannot amount to undue burden. And as discussed below, Dr. Atkinson's concerns over health information do not warrant quashal.

### D.    Dr. Atkinson's Patient-Privacy Arguments Provide No Basis to Quash

Dr. Atkinson complains that the subpoena seeks patient-related information—such as procedure results and patient feedback—that would implicate HIPAA's protections of protected health information ("PHI") and create an undue burden of redacting patient records. MTQ at 9–10. While the requests may not specifically carve out PHI, InMode does not believe its requests implicate PHI as defined by HIPAA. Indeed, none of the "patient-related information" identified by Dr. Atkinson is PHI as opposed to standard health information of which HIPAA does not limit the disclosure. Simple information regarding feedback and results of treatment is not PHI in itself. However, to the extent Dr. Atkinson stores this information in such a way that it is associated with and cannot be separated from identifying information covered by HIPAA, HIPAA only requires that the PHI be *either* de-identified *or* otherwise produced in compliance with the HIPAA privacy rule. Once the information is de-identified it is no longer PHI covered by HIPAA, eliminating the concerns

---

[3] Notably, Dr. Atkinson has already served objections to the requests, further mooting this complaint.

with HIPAA compliance.

To the extent de-identifying the health information is too burdensome a task, HIPAA provides at least one other method for compliance—a HIPAA-qualified protective order. 45 C.F.R. § 164.512(e). Unredacted PHI can be disclosed in response to a subpoena if the requesting party makes satisfactory assurances that it has requested a HIPAA-qualified protective order that prohibits the use or disclosure of PHI for any purpose other than the litigation and requires the return or destruction of the PHI at the end of the proceeding. *Id.* InMode provided a proposed HIPAA-qualified protective order to BTL before Dr. Atkinson filed present motion, but BTL has pushed back on InMode's repeated requests for BTL to agree to the filing. Ex. G. InMode expects that its request for entry of a HIPAA-qualified protective order will be on file shortly. Thus, HIPAA permits the disclosure of any PHI in response to the subpoena, and there is no concern over the burden of de-identifying the information.

Dr. Atkinson's fallback argument—that InMode "does not need" patient results or feedback (MTQ at 10)—fares no better. BTL has put this information squarely at issue. BTL has argued that one of the claimed method steps describes "exclusively . . . a potential biological response." Dkt. No. 187 at 12. Patient results are therefore relevant to whether the accused procedures achieve the claimed biological response—e.g., whether the physicians directly infringe. Moreover, BTL's own expert, Dr. Evans, has testified that patient feedback is how she "know[s] that the [accused procedure] causes vaginal tightening and labial remodeling." Dkt. No. 206-1 at 85:2–6. Further, patient feedback is highly relevant to damages and the value of the accused functionality. This discovery from Dr. Atkinson cannot simply be replaced by "the patent, accused product documentation, BTL's instructions and training, BTL witnesses, technical experts, and properly disclosed damages evidence." *Contra* MTQ at 10.

In short, InMode has satisfied the conditions for lawful disclosure under 45 C.F.R. §

12

164.512(e) by seeking a HIPAA-qualified protective order. Neither Dr. Atkinson nor BTL can manufacture an "undue burden" or "legal bar" out of a routine, regulation-sanctioned production mechanism.

### E.    InMode's Subpoena Seeks Percipient Fact Discovery, Not Unretained Expert Opinion Testimony

Dr. Atkinson's contention that the subpoena improperly seeks "unretained expert" opinion under Rule 45(d)(3)(B)(ii) mischaracterizes the discovery InMode seeks. MTQ at 10–12. InMode does not seek expert opinions from Dr. Atkinson—it seeks percipient fact testimony about what she actually did. The distinction is well established. Physicians "may testify as both fact and expert witnesses," and fact discovery from a physician properly includes "opinions based on the witness's own involvement in the circumstances of the case" where the testimony "arises . . . from his [or her] ground-level involvement in the events giving rise to the litigation." *Winthrop v. Omni Hotels Mgmt. Corp.*, No. 19-cv-979-AJ, 2021 U.S. Dist. LEXIS 57086, at *6 (D.N.H. Feb. 11, 2021) (quoting *Downey v. Bob's Disc. Furn. Holdings, Inc.*, 633 F.3d 1, 6 (1st Cir. 2011)).

Every request and topic in InMode's subpoena falls within permissible fact discovery. Each bears directly on Dr. Atkinson's "ground-level involvement in the events giving rise to the litigation," *Winthrop*, 2021 U.S. Dist. LEXIS 57086 at *5–6 (citation omitted), and seeks information "based on the first[-]hand experience of the witness, i.e., the observations and conduct of the witness." *DR Sys., Inc. v. Eastman Kodak Co.*, No. 09cv1625-H (BLM), 2009 U.S. Dist. LEXIS 84575, at *8 (S.D. Cal. Sept. 14, 2009). Dr. Atkinson's "current understanding of how to use the accused devices and perform accused procedures" is not expert opinion—it is first-hand testimony about how she uses the devices and performs the treatments. That is the essence of fact discovery. The same is true for testimony about the steps performed during any accused procedure and the results of those procedures. Indeed, BTL itself has argued that one of the claimed method steps is "describe[d] exclusively as a potential biological response." Dkt. No. 187 at 12. Testimony about whether that biological response occurs

when Dr. Atkinson performs the accused treatments goes directly to direct infringement—and is quintessential fact testimony. The suggestion that questions about patient feedback or Dr. Atkinson's awareness of InMode somehow constitute "expert testimony" strains credibility. These are basic, relevant fact questions ("what feedback did you receive?"; "when did you first learn about a competitor?"; "what were the patient responses to treatment?") and no specialized expertise is required to answer them.

Dr. Atkinson's principal authority, *Cates v. Zeltiq Aesthetics, Inc.*, is inapposite. As Dr. Atkinson admits, in *Cates*, the subpoenaed physician was entirely uninvolved with and "knew little about" the events leading to the products liability case: he had no part in the treatment of the plaintiff, he had not designed the device at issue, he did not draft the warning language in the directions for use, and did not report the adverse events to the FDA. MTQ at 11; *Cates v. Zeltiq Aesthetics, Inc.*, No. 20-mc-91234-NMG, 2020 U.S. Dist. LEXIS 167158, at *5 (D. Mass. Sep. 14, 2020). Conversely, here, Dr. Atkinson is intimately involved in the events leading to this patent infringement case. Dr. Atkinson is a direct infringer of the asserted method claims, and her own performance of the accused procedures using BTL's devices is part of the very "specific occurrence[] in dispute." Fed. R. Civ. P. 45(d)(3)(B)(ii). InMode does not seek Dr. Atkinson's testimony as an expert witness opinion "result[ing] from the expert's study that was not requested by a party;" InMode rather seeks her percipient witness testimony and documentation. *Id*.

Further, the *Kaufman v. Edelstein* factors Dr. Atkinson invokes do not move the needle. MTQ at 6–7, 11. As an initial matter, Dr. Atkinson improperly attempts to shift the burden to InMode to show that the subpoena is proper. But as courts in this District have explained, "it is not plaintiffs' burden to establish why the subpoena should not be quashed; instead, it is [the third party's] burden to show why it should." *Green*, 152 F. Supp. 3d at 37. Nevertheless, each factor weighs against quashal. Dr. Atkinson is called because of her unique knowledge of relevant facts—her own

14

purchases, training, and treatment steps as a family medicine physician who was the first physician in New England to offer the EmFemme 360 procedure[4]—not to supply opinion testimony; her testimony requires no newly formed opinions; she is uniquely positioned to describe what she personally did; and no retained expert can substitute for her first-hand account. Dr. Atkinson is not subpoenaed to appear as an expert witness; she is a fact witness.

###### F.    Dr. Atkinson's Request for a Stay and Alternative Relief Should Be Denied

Dr. Atkinson asks the Court, in the alternative, to stay all compliance until InMode has "exhausted party discovery from BTL" and to limit any later discovery to "narrow, nonprivileged, nonpatient, nonexpert, noncumulative percipient facts." MTQ at 13. This request should be denied for several reasons.

First, Rule 45 imposes no exhaustion requirement. As discussed above, "Rule 45 does not require that a requesting party exhaust party discovery before seeking discovery from a nonparty." *In re Uber*, 2024 U.S. Dist. LEXIS 123530 at *19–20. Conditioning third-party discovery on "exhaustion" of party discovery would impose a prerequisite that the Federal Rules do not recognize and would be prejudicial here. If the Court were to stay compliance pending completion of party discovery from BTL, InMode would have no assurance that BTL will ever produce the information at issue, and the discovery deadline would likely pass before any stay could be lifted. The proposed stay is therefore quashal by another name.

Second, a stay is impracticable given the discovery schedule. InMode served the subpoena on Dr. Atkinson on May 21, 2026, with fact discovery set to close shortly. BTL has produced fewer than 300 documents in six months—largely irrelevant marketing materials—despite InMode's repeated requests for substantive production. A stay would effectively deny InMode the opportunity to obtain

---

4 *Transform Your Confidence with EMFEMME 360™*, ATKINSON FAMILY PRACTICE (last visited June 26, 2026) https://www.atkinsonfamilypractice.com/emfemme

direct-infringement evidence before the close of discovery.

Third, the proposed limitations would gut InMode's case. Dr. Atkinson's proposed restrictions would exclude "patient outcomes," "physical changes to anatomy," "patient experience," and observations "regarding tissue heating, tissue remodeling, [and] anatomical changes." MTQ at 10, 12. But these categories are the direct-infringement evidence that is relevant to InMode's inducement claims. *See* infra, Section IV.A. Excluding it wholesale would deprive InMode of evidence necessary to meet its burden. Similarly, Dr. Atkinson's request to exclude "documents available from BTL" presupposes that those documents are, in fact, available from BTL. They are not. BTL has previously stated that it "does not maintain a central repository for customer communications." Ex. E at 2. The Court should not accept a proposed limitation premised on the hope that BTL will supply this information.

Cost-shifting does not support quashal or a stay. To the extent Dr. Atkinson raises Rule 45(d)(2)(B)(ii) as a basis for alternative relief, that provision authorizes the Court to protect a nonparty from "significant expense"—it does not authorize quashal or a stay. *See LSI Corp. v. Vizio, Inc.*, No. 12-mc-91068-DJC, 2012 U.S. Dist. LEXIS 83657, at *3 (D. Mass. May 24, 2012). InMode does not oppose reasonable cost-shifting if the Court determines it is appropriate, and is willing to bear the reasonable costs associated with Dr. Atkinson's compliance, including travel costs and the costs of attending the deposition. That willingness further underscores the absence of undue burden: Dr. Atkinson will not be required to bear the expense of compliance out of pocket.[5] The availability of cost-shifting as a remedy confirms that the proper course is to order compliance with appropriate cost protections—not to stay or quash the subpoena.

In sum, neither a stay nor the proposed limitations are warranted. InMode's subpoena seeks

---

[5] Additionally, it does not appear that there would be significant be costs to shift, as BTL has stated that it "expects to pay for counsel for the subpoenaed physicians." Dkt. No. 216 at 11.

narrowly targeted, highly relevant percipient-fact discovery from a physician who performs the accused treatments. The Court should deny Dr. Atkinson's request for alternative relief in its entirety.

## V.   CONCLUSION

For the foregoing reasons, Dr. Atkinson's motion to quash should be denied.

Dated: June 26, 2026

Respectfully Submitted,

/s/ William A. Hector
Peter M. Durney (BBO # 139260)
pdurney@smithduggan.com
Patricia A. Hartnett (BBO # 568206)
phartnett@smithduggan.com
SMITH DUGGAN CORNELL
& GOLLUB LLP
101 Arch Street, Suite 1100
Boston, MA 02110
Telephone: (617) 228-4400
Facsimile: (617) 482-3917

Caitlin C. Blanche (*pro hac vice*)
cblanche@venable.com
Michael P. Sandonato (*pro hac vice*)
msandonato@venable.com
VENABLE LLP
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
Telephone: (310) 229-9900
Facsimile: (310) 229-9901

Frank C. Cimino, Jr. (*pro hac vice*)
fccimino@venable.com
VENABLE LLP
600 Massachusetts Avenue, NW
Washington, DC 20001
Telephone: (202) 344-4000
Facsimile: (202) 344-8300

Parker G. Zimmerman (*pro hac vice*)
pgzimmerman@venable.com
VENABLE LLP
151 W. 42nd Street, 49th Floor
New York, NY 10036
Telephone: (212) 307-5500
Facsimile: (212) 307-5598

17

William A. Hector (*pro hac vice*)
wahector@venable.com
VENABLE LLP
101 California Street, Suite 3800
San Francisco, CA 94111
Telephone: (415) 653-3750
Facsimile: (415) 653-3755

*Attorneys for Plaintiff InMode Ltd.*

18

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 26 2026, a true and correct copy of the foregoing document was delivered to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered participants on the above date.

/s/ William A. Hector