# EXHIBIT C



May 5, 2026

**VIA   Email**

William A. Hector
VENABLE LLP
101 California St., Suite 3800
San Francisco, CA  94111
wahector@venable.com

RE:    *InMode Ltd. v. BTL Industries, Inc.*, Case No. 1:24-cv-12955-PBS
        **InMode's January 2, 2026 Letter Alleging Deficiencies in BTL Industries' First Supplemental Objections and Responses to InMode's First Set of Interrogatories and InMode's First Set of Requests for Production**

Counsel,

We write following up from the parties' meet and confer and further responding to InMode's Letter. BTL Industries maintains that several inaccuracies remain in InMode's initial letter that have not been resolved, but BTL Industries has endeavored to resolve the matters where possible.

**BTL Industries' Objections Are Proper and Timely**

BTL Industries disagrees with InMode's assertion that BTL Industries' objections are "boilerplate." It remains BTL Industries' position that the objections are sufficiently specific to the deficiencies in InMode's requests. Where BTL Industries has withheld documents based on objections, BTL Industries has or will specifically state so in its responses. Further, as InMode's letter repeatedly acknowledges, where BTL Industries has limited the scope of its response, BTL Industries states so.

BTL Industries' supplemental responses are also timely and were necessitated by the pending IPR and the Court's resolution of BTL Industries' Motion to Stay. Any additional objections raised were appropriate given the evolving procedural posture. BTL Industries, therefore, disagrees with InMode's position that BTL Industries has waived certain of its objections.

Regardless, none of InMode's cited case law mandates that BTL Industries "withdraw" any objections. BTL Industries therefore declines to do so and maintains that its objections are appropriate.

**InMode's Burden of Proof Arguments Mischaracterize BTL's Position**

William Hector
InMode v. BTL
May 5, 2026
Page 2

InMode mischaracterizes BTL's objections regarding burden of proof. BTL Industries' position is not that InMode cannot seek discovery on issues where it bears the burden, but rather that many requests are overbroad and as written require BTL Industries to draw legal conclusions for InMode on matters for which InMode bears the burden of proof. BTL Industries objects to such requests that require it to make legal determinations, such as assessing what constitutes tissue remodeling or determining patent citation relevance, to determine what documents are responsive. BTL Industries is not obligated to perform such an analysis for InMode's benefit.

For example, RFP Nos. 37 and 38 ask BTL Industries to assess what documents may support secondary considerations. This request requires BTL Industries to determine on a document-by-document basis whether a document supports or refutes a finding of secondary considerations. This is a legal conclusion, and BTL Industries is not required to make such an assessment for InMode. If InMode believes there are categories of documents supporting its burden in this matter, InMode is welcome to serve requests that sufficiently identify those categories of documents. InMode may not require BTL Industries to perform a legal analysis on InMode's behalf.

The same reasoning further applies to BTL Industries' responses to RFP Nos. 44 and 45.

**"State the Basis" Interrogatories**
Regarding InMode's "state the basis" interrogatories (Nos. 2, 3, 5, 9), BTL Industries notes that each of these requests seeks discovery and contentions that are specifically scheduled within the Court's Scheduling Order, which accordingly overrides any alleged deficiencies rooted in Local Rule 26.5(c)(8). Moreover, InMode received BTL Industries' non-infringement and invalidity contentions before InMode sent the initial letter, rendering its complaints moot. InMode's complaints, therefore, serve no purpose but to be vexations and multiply the current proceedings.

**"Identify" Interrogatories**
Regarding InMode's "identify" interrogatories (e.g., Nos. 4 and 15), BTL Industries notes that it complied with InMode's request to identify, as explained during the meet and confer. If InMode wished for that information to be arranged in a specific way or wished to request additional information, then the Interrogatory should have requested such information.

**Technicalities of Documents**
InMode identified that a number of documents appeared to be improperly produced as PDFs rather than their native file types. Using image files (e.g., PDF and TIFF) to produce BTL Industries notes that files with extensions like ".ai" (Adobe Illustrator files) are produced according to standard production protocols (e.g., producing as PDFs or TIFFs), which typically do not produce native formats for images. If InMode feels entitled to a different production format, then InMode is welcome to identify the basis and particular details for such a request.

William Hector
InMode v. BTL
May 5, 2026
Page 3

Simple investigation by InMode would have shown that .ai files are Adobe design files. Some of which are a white logo that when produced on a white PDF appears blank. This was reasonably discernable from reviewing the file name and researching the file type.

BTL Industries is also confident that InMode is aware that a .zip file is a type of compressed folder file. As produced it does not contain documents but represents the folder uploaded. This is merely a technical artifact.

Had InMode investigated its claims before sending its letter, InMode would have realized it could have discerned this information for itself or asked for more information rather than make unfounded accusations of systematic error.

**Allegedly Irrelevant Documents Produced**
InMode alleges that several irrelevant and publicly available documents were produced. These were produced in response to InMode's requests. If InMode believes the documents are not relevant, that reflects the breadth of the requests. In the instance of the documents produced, however, the documents were of a finite and easily accessible nature making it more efficient to produce the documents than to challenge the requests. Frankly, BTL Industries finds it surprising that InMode would complain about getting too many documents. BTL Industries also maintains that having produced a non-relevant document is not an admission of relevance nor does it obligate BTL to produce additional similar documents.

**Confidentiality Designations**
If InMode would like a document de-designated to be non-confidential, it is welcome to specifically identify such document.

**Corrections to InMode's Factual Assertion**
Several of InMode's specific allegations are inaccurate:

1. **Interrogatory No. 1:** BTL Industries provided comprehensive product information in the control, custody, or possession of BTL Industries. BTL Industries is the distributor, meaning that BTL Industries has complete information related only to marketing and sales personnel and only for the United States. Other BTL affiliates are responsible for design, development, testing, and manufacture. Further, as discussed during the meet and confer, references to EMFEMME and ULTRAFEMME is a complete response for this Interrogatory asking for "systems, treatment tips, or products that can be used to apply radiant energy to female genital tissue."

2. **Interrogatory No. 6:** BTL Industries' response that it is "unaware of any occasion" it examined InMode's Empower RF product is accurate. Moreover, the request was whether BTL Industries had performed the requested actions. BTL Industries disagrees that BTL_Inmode-0001498 suggests otherwise and only shows a marketing document comparing various features of various devices. To BTL Industries' knowledge, this document was created based on publicly available information on the internet. For these

William Hector
InMode v. BTL
May 5, 2026
Page 4

reasons, BTL_Inmode-0001498 does not fall within the scope of the request and no supplementation for the Interrogatory is required.

3. **Interrogatory No. 8:** BTL Industries specifically delineated InMode products and why BTL Industries does not consider the products competing. InMode's statement that BTL Industries failed to properly identify competing devices is incorrect. If InMode believes particular InMode devices compete with BTL Industries devices, then InMode is in the best position to make that determination and should specifically request that information. To the extent InMode seeks additional information, such information has already been objected to as explained in the supplemental responses.

4. **Document Production Issues:** InMode's complaint about receiving "too many documents" is contradictory to its allegations of insufficient production. BTL Industries has been supplementing its productions and will continue to do so as document review is completed.

**Other RFP Responses**

- **RFP No. 1, 6:** If InMode believes other patents or applications should be included, InMode should identify those patents and applications. BTL Industries will not undertake an effort to identify the entirety of InMode's patent portfolio or make any qualitative assessment of what patents are "related." InMode is in the best position to determine what InMode patents it believes are relevant and can ask specifically about those patents.

- **RFP No. 4, 14[1], 16, 19, 20[2]:** BTL Industries identified the documents it would produce and its objections. If InMode believes it is entitled to more, InMode can identify the additional scope and explain why such request is appropriate.

- **RFP No. 17:** BTL Industries identified the documents it would produce and its objections. BTL Industries further notes, as stated in its objections, that the additional scope identified in InMode's letter is objectionable. For example, the additional scope would require BTL Industries to make legal conclusions on InMode's behalf.

- **RFP No. 23:** BTL Industries identified the documents it would produce and its objections. If InMode believes it is entitled to the identified documents, then InMode will need to provide more information than vague allusions to "damages" for BTL Industries to consider.

- **RFP No. 29:** BTL Industries identified the documents it would produce and its objections. InMode states that "multiple categories of document beyond simply executed

---

[1] With regard to No. 14, BTL Industries notes that InMode's complaint is that BTL Industries' response states BTL Industries will produce a broader scope of documents than requested.

[2] Again, BTL Industries is a distributor and does not manufacture the Accused Instrumentalities.

William Hector
InMode v. BTL
May 5, 2026
Page 5

licenses and settlement agreements" are included but provides no specificity what InMode considers responsive.

- **RFP No. 36:** BTL Industries identified the documents it would produce and its objections. At the time of the response (and currently), BTL is not aware of any other category of agreement that would exist.

- **RFP Nos. 41, 42, 43:** BTL Industries identified the documents it would produce and its objections, And BTL has already produced extensive sales data. If InMode believes that there are any outstanding deficiencies then InMode should identify them.

**Other Interrogatories**
- **ROG No. 5:** BTL Industries will investigate and provide any additional information when it supplements its interrogatory responses as agreed during the meet and confer.

**EMFEMME and ULTRAFEMME Terminology**
InMode identified that responses identifying EMFEMME and ULTRAFEMME products did not include the Exilis and Exion systems. InMode further alleged that BTL Industries failed to fully answer Interrogatories that requested identification of persons such as those involved with designing the Accused Products. As discussed during the meet and confer, references to EMFEMME and ULTRAFEMME were viewed as complete responses. However, as agreed in the meet and confer, BTL Industries will provide clarifying statements in the supplemental responses.

BTL Industries has also investigated InMode's complaint about only identifying marketing personnel. BTL Industries confirms that its responses are complete responses that reflect the information within BTL Industries' possession, custody, and control as the U.S. distributor.

**Production Timeline and Supplementation**
BTL Industries has continued producing documents as part of its ongoing investigation into the discovery requests and will continue to supplement as review progresses. As agreed to during the meet and confer and for efficiency of the parties, BTL Industries will also continue to supplement the responses to InMode's discovery requests in light of the above issues once the parties have reached an agreement on the above issues for the Interrogatories and RFPs.

Please contact us with any questions.

William Hector
InMode v. BTL
May 5, 2026
Page 6


Very truly yours,

**PATTERSON INTELLECTUAL PROPERTY LAW, P.C.**

_____

Nathan North
nin@iplawgroup.com